UNITED GUARANTY RESIDENTIAL IN-
SURANCE COMPANY OF IOWA, an
Iowa Corporation, Plaintiff-Appellee,

v.

PHILADELPHIA SAVINGS FUND
SOCIETY, Party in
Interest-Appellant,

Epic Mortgage, Inc., a Delaware Corpora-
tion, Community Savings & Loan, Inc.,
a Maryland Association, Dominion
Federal Savings & Loan Association, a
federal savings and loan association,
First National Bank of Maryland, a na-
tional banking corporation, Continen-
tal Federal Savings Bank, a federal sav-
ings bank, American Savings & Loan
Association, an Indiana savings and
loan association, individually and on
behalf of others similarly situated, De-
fendants.

UNITED STATES MORTGAGE
INSURANCE COMPANY,
Plaintiff-Appellee,
v.

PHILADELPHIA SAVINGS FUND
SOCIETY, Party in
Interest-Appellant,

and

Epic Mortgage, Inc., a Delaware Corpora-
tion, Dominion Federal Savings &
Loan Association, a federal savings and
loan association; First National of Ma-
ryland, a national banking corporation;
Continental Federal Bank, a federal
savings bank; American Savings Bank;
Valley Federal Savings & Loan Associ-
ation; Virginia First Federal Savings &
Loan Association; Shadow Lawn Sav-
ings & Loan Association, Defendants.

Nos. 86–1655, 86–1656.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 10, 1986.

Decided May 27, 1987.

Edward M. Posner (James C. Ingram,
Thomas Schaufelberger, Drinker, Biddle &
Reath, William T. Freyvogel, Adams, Port-
er & Radigan, on brief) for party in inter-
est-appellant.

Thomas Atherton Allen (Ellen K. Gless-
ner, Steven J. Cooperstein, White &
Williams, on brief) for plaintiffs-appellees.

Before WIDENER, Circuit Judge,
HAYNSWORTH, Senior Circuit Judge,
and MAXWELL, Chief Judge, United
States District Court for the Northern

District of West Virginia, sitting by designation.

WIDENER, Circuit Judge:

This dispute arises out of the collapse of Equity Programs Investment Corporation (EPIC), a real estate syndication firm which formed and sold real estate limited partnership interests. EPIC organized approximately 350 Limited partnerships which purchased in excess of 20,000 single-family homes. EPIC financed these homes with loans originating from EPIC Mortgage, Inc., an EPIC affiliate that originates and services mortgage loans. EPIC Mortgage packages these loans in pools and sells them to financial institutions in the form of Mortgage Pass Through Certificates. EPIC Mortgage also obtained private mortgage insurance on the loans from, among others, United Guaranty Residential Insurance Company of Iowa (UGI) and United States Mortgage Insurance Company (USMIC). The First National Bank of Maryland is the trustee for the holder of the mortgage certificates representing the interest of the purchasers of the mortgage loans.

Philadelphia Savings Fund Society claims to be the purchaser of approximately $217,-000,000 of EPIC Mortgage's certificates, making it the largest holder of EPIC Mortgage loans. Of the $217,000,000 worth of loans and certificates held by Philadelphia, approximately $29,000,000 is insured by USMIC and in excess of $8,000,000 is insured by UGI. This leaves Philadelphia the largest beneficial holder of both USMIC-insured and UGI-insured EPIC Mortgage loans. It should be noted that other certificate holders bought certificates both before and after Philadelphia's purchases.

In late 1985, after EPIC's collapse, the insurance companies, UGI and USMIC, filed separate suits in various federal district courts, alleging that EPIC Mortgage engaged in a pattern of misrepresentations concerning material facts in its applications for policies and certificates of mortgage insurance. Accordingly, UGI and USMIC sought, inter alia, declarations that they were free to rescind those policies and certificates of mortgage insurance. On April 11, 1986, the Judicial Panel of Multi-District Litigation consolidated these and other related actions for coordinated pre-trial proceedings in the United States District Court for the Eastern District of Virginia. Prior to the consolidation and transfer of the cases, Philadelphia moved to intervene as a matter of right in the USMIC action. And after consolidation, Philadelphia moved for intervention as of right or, alternatively, permissive intervention in the UGI action, which motion was not opposed. By order dated July 10, 1986, the district court denied Philadelphia's motions to intervene in both actions, concluding "that [Philadelphia's interests] are adequately represented by an existing party, namely First National Bank." The lower court then rejected Philadelphia's argument that the Bank could not adequately protect its interests. Because we agree with the position taken by Philadelphia, we vacate and remand.

Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure which provides in pertinent part:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In order to successfully intervene, Philadelphia "must show, first, an interest sufficient to merit intervention; second, that without intervention, its interest may be impaired; and, third, that the present litigants do not adequately represent its interest." *Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir.1976). Philadelphia must meet all three requirements to prevail.

There can be no doubt that Philadelphia has a significant interest in the subject of this action and that the disposition of this case may impair or impede its ability to protect that interest. Here, the insurance companies seek to rescind insurance on loans in which the Bank is trustee. Should the insurers prevail, Philadelphia may lose the benefit of insurance on about $37,000,-000 in mortgage certificates of which it is the owner. Thus, the disposition of this case and inadequate protection of its interests might well deprive Philadelphia of the benefit of a substantial amount of mortgage insurance.

Having met the first two requirements under Rule 24(a), Philadelphia is entitled to intervene as a matter of right unless its interests are adequately represented by existing parties. The district Court ruled that Philadelphia's interests were adequately represented by its trustee, the Bank, but, as noted, we do not agree.

In *Trbovich v. United Mine Workers*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), the Supreme Court stated that the application satisfies Rule 24(a)'s third requirement if it is shown that representation of its interest *"may be"* inadequate. *Trbovich*, 404 U.S. at 538 n. 10, 92 S.Ct. at 636 n. 10 (quotations are the Court's; italics are ours). The Court further added that the burden of making this showing should be treated as "minimal." In addition, *Trbovich* recognized that when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those interests should be entitled to intervene. 404 U.S. at 538–39, 92 S.Ct. at 636. The test used by the Court in that case was to inquire whether each of the dual interests may "always dictate precisely the same approach to the conduct of the litigation." 404 U.S. 539, 92 S.Ct. at 636.

*Trbovich* was a case involving a suit by the Secretary of Labor to set aside an election of officers of the United Mine Workers of America. Trbovich was a member of the UMW and had filed the initial complaint with the Secretary that led to the suit. He then sought to intervene in the case to urge additional grounds for setting aside the election, seek certain safeguards in any new election, present evidence, and argue in support of the Secretary. The court decided that the statute imposed on the Secretary the duty to serve two interests, the rights of the members against their union and the public interest in free union elections. It stated that "[b]oth functions are important and they may not always dictate precisely the same approach to the conduct of the litigation. Even if the Secretary is performing his duties, broadly conceived, as well as can be expected, the union member may have a valid complaint about the performance of 'his lawyer.' Such a complaint, filed by the member who initiated the entire enforcement proceeding, should be regarded as sufficient to warrant relief in the form of intervention under Rule 24(a)(2)." 404 U.S. at 539, 92 S.Ct. at 636–37.

We think that *Trbovich* should control our case. Like the Secretary in *Trbovich*, the Bank is charged with representing multiple, distinct interests in the various certificates of deposit issued on different dates to different purchasers. These multiple interests have the potential of dictating a different approach to the conduct of the litigation, an approach not consistent with what Philadelphia may reasonably conceive to be its best interests. Our case is even stronger than *Trbovich*, for the Court, in *Trbovich*, found it unnecessary to explain how the interests of the Secretary and the union member did not coincide, only that the public interest of the Secretary was broader than the narrower interest of the complaining union member. As seen from the quotation just above, the Court in *Trbovich* also gave weight to the fact that one entitled to intervene "may have" a complaint about the performance of "his lawyer," which would be, of course, the Bank in our case. We also note that the Court expressly rejected the argument that the intervenor's interest "must be adequately represented unless the court is prepared to find that the Secretary has failed to per-

form his statutory duty." 404 U.S. at 538, 92 S.Ct. at 636.

It must be conceded that the Bank here has a broader interest in protecting all of the certificate holders than does Philadelphia's narrower interest in protecting its own mortgage certificates. The argument that the Bank must have failed to perform its duty before intervention should be permitted has been rejected in *Trbovich*. The discussion which follows will demonstrate a compliance of the facts of this case with *Trbovich*, which we follow.

UGI alleges, for example, that the fraud of EPIC Mortgage took place on various dates between December 1984 and August 1985, which allegations probably include many or even most of the intervening dates between those two. The allegations of USMIC allege the fraud of EPIC Mortgage took place in May of 1984 and thereafter with each application for a certificate of mortgage insurance. So the allegations of fraud should be considered, at least at this stage of the case, to include nearly all of the dates between May of 1984 and August of 1985. Assuming that the insurance companies have evidence which tends to support some aspects of their claims, it is easily seen that should fraud be proved at a later date than the date of issuance of the particular mortgage certificate involved, or some other critical date such as the date of its assignment to Philadelphia, as may be applicable, then Philadelphia would be disinterested in defending that claim. The Bank, on the other hand, would be duty bound to defend with equal alacrity all of the various claims of fraud made by the insurance companies, for the proof of any one of them might affect some or even all of the beneficial owners of the certificates. To illustrate: if fraud were proven in the application for the master policy, then it might be that all the certificates of insurance issued under that policy might not be enforceable, but if fraud were only proven for subsequent representations made to keep the master policy in effect, then certificates of insurance issued before that date might well be safe so far as that fraud is concerned; and if fraud were only prov-

en in the appraisals of particular pieces of property, then only those particular certificates of insurance would be involved. Thus, the dates of the fraud which the insurance companies may be able to prove is of the greatest interest to Philadelphia, whose purchases insured by USMIC certificates of insurance took place in November and December 1984 and April and May of 1985. Philadelphia purchased its last EPIC mortgage certificate on May 9, 1985 prior to one of the specific allegations of fraud by UGI. On the other hand, the Bank must defend against all of the dates with equal vigor, and if a later date might be easily defended against which date would protect Philadelphia, but an earlier date much more hard to defend against would protect more of the mortgage certificates, then the Bank would be obliged to try to prove the earlier date, while Philadelphia would be obliged to try to prove the later date, and thus to a trier of fact the Bank and Philadelphia would seem to, and might actually, be working at cross purposes. We think this is what the Court meant in *Trbovich* when it stated that the proper inquiry was whether the parties' dual interests may dictate "the same approach to the conduct of the litigation." 404 U.S. at 539, 92 S.Ct. at 636. In our case, it is seen that, while the interests of the Bank and Philadelphia may turn out to be the same, they may not be, and although the Bank's representation of Philadelphia's interest may be adequate, it also may be inadequate. Since the parties' interests may not dictate the same approach to the conduct of the litigation, and since the representation of Philadelphia by the Bank may be inadequate, we are of opinion it was error to deny Philadelphia's motions to intervene. This is more especially so when the motions were made timely and before the issues became as definitely fixed as they later will be, and when discovery might provide much of the information about the dozens of dates and other facts involved in this proceeding which may vitally affect the insurance companies' claims of fraud which include the mortgage certificates purchased by Phila-

delphia. The outcome is certain to affect Philadelphia. It is idle to contend that, if the insurance companies win their case that they will not claim that Philadelphia is barred from recontesting the same issues to be tried here because of estoppel or issue preclusion or some allied doctrine.[1] Also, Philadelphia's willingness to take the case as it found it on the date the case was argued before us demonstrates that little or no delay will be caused by allowing the sought for intervention.

We conclude that it was error for the district court not to allow Philadelphia's intervention in the case. The order of the district court appealed from is vacated and the case is remanded with instructions to allow Philadelphia to intervene in the case.

Because we decide that Philadelphia is entitled to intervene as a matter of right, we do not address any question of permissive intervention.

VACATED AND REMANDED WITH INSTRUCTIONS

---

1. Wright, Miller and Kane, *Federal Practice and Procedure* (1986) v. 7C, § 1907 is instructive. Rule 24(a)(2) before the 1966 amendment provided for intervention of right if "the applicant is or may be bound by a judgment in the action." The text takes the position, we think correctly, that the new rule is less restrictive. The change according to Wright was because the words of the old rule "is or may be bound" had been construed to mean that judgment in the suit at hand must have res judicata effect on one seeking intervention. p. 251. This led to a situation in which intervention must be denied if the representation was adequate because not within the rule, and denied if inadequate because there could be no preclusive effect. The old rule "... certainly restricted intervention unduly and barred absentees from being heard

in their own behalf in many instances in which the judgment might be devastating to their own litigation as a practical matter even though technically not res judicata". p. 251. Notably absent is any indication by the insurance companies in this case that a favorable judgment for them would not be pleaded in bar of a suit by Philadelphia on the mortgage insurance policies at issue in this case. Yet, without expressing any opinion on the question, it is at once apparent that a judgment in this case in favor of the insurance companies might be devastating as a practical matter to Philadelphia's own litigation on its own policies, even though in the last analysis, and years later, a judgment here might turn out not to bar Philadelphia's claim.